UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EVERETTE L. CARRIGG and
PATSY O. CARRIGG,

    Plaintiffs,

v.                                 Case No. 3:18-cv-654-J-34PDB

GENERAL R.V. CENTER, INC.,

    Defendant.

## O R D E R

**THIS CAUSE** is before the Court on Defendant General R.V. Center, Inc.'s (General R.V.) Motion to Transfer Venue, or in the Alternative, Motion to Dismiss and Memorandum of Law in Support (Doc. 6, Motion), filed June 19, 2018. Plaintiffs, Everette L. Carrigg and Pasty O. Carrigg (Carriggs), filed their Response and Opposition to Defendant's Motion to Transfer Venue or in the Alternative Motion to Dismiss (Doc. 13, Response), on July 26, 2018. With leave of Court, General R.V. filed a reply to the Carriggs' Response. See Defendant General R.V. Center, Inc.'s Reply to Plaintiff's Doc. 13 Response and Opposition to Defendant's Motion to Transfer Venue or in the Alternative Motion to Dismiss (Doc. 17, Reply), filed August 10, 2018. Accordingly, this matter is ripe for review.

## I. Factual and Procedural Background[1]

This case arises out of the Carriggs' purchase in November of 2016, of a used recreational vehicle (R.V.) from General R.V.[2] The Carriggs assert that General R.V. intentionally sold them a defective vehicle after misrepresenting to them the condition and quality of the R.V. they ultimately purchased. See Complaint at ¶¶ 22, 30 (Doc. 1), filed May 17, 2018.[3]

Not long after purchasing the vehicle, the Carriggs encountered any number of problems with the R.V., all of which were allegedly in direct conflict with the warranties and representations General R.V. made regarding the quality of the vehicle. Complaint at ¶¶ 28, 32. On numerous occasions the Carriggs took the vehicle to General R.V. for repairs, but General R.V. "adamantly refused to fix the defective conditions, structural problems, and the malfunctions of" the R.V. Id. at ¶ 44. General R.V. also refused to allow the Carriggs to "trade in the defective [R.V.] for a suitable" new R.V., id. at ¶ 42, and instead "lured and attempted to convince the Carriggs into purchasing a higher priced RV [while demanding] . . . that the Carriggs continue paying on the loan associated with the defective" R.V. Id. at ¶ 43. The Carriggs assert that since purchasing the R.V., the vehicle has been sitting unrepaired at the General R.V. service center, or parked in the Carriggs'

---

[1] For the purposes of establishing the background facts for this Order, the Court assumes that the allegations contained in the Complaint and recited here are true. Likewise, the Court refers to the supporting affidavits and exhibits submitted by the parties in conjunction with General R.V.'s Motion.

[2] In purchasing the vehicle, the Carriggs signed two different agreements with General R.V. They first signed an initial contract with the company to place a "hold binder" on the R.V. so that they could have time to obtain the necessary financing for the vehicle. See Complaint at ¶¶ 24 - 25 (Doc. 1), filed May 17, 2018; Doc. 1-1 (Nov. 11, 2016 Contract). Then, on November 21, 2016, they signed a Purchase Agreement which finalized the sale and their purchase of the R.V. See Complaint at ¶ 26; Doc. 1-2 (Nov. 21, 2016 Purchase Agreement).

[3] The Carriggs are residents of Jacksonville, FL. See Complaint at ¶ 4 (Doc. 1), filed May 17, 2018. General R.V. is a national R.V. dealership, with its corporate offices in Wixom, Michigan, and dealerships in six states, including one in Orange Park, Florida. Id. at ¶¶ 5, 12.

back yard due to its unsafe and inoperative condition, rather than being used for travel. Id. at ¶¶ 39, 48-49. Finally, the Carriggs assert that throughout their dealings with General R.V., its "agents/managers knew that the [Carriggs] were elderly, retired and that they are living on a fixed, limited income." Id. at ¶ 40.

In the Complaint, the Carriggs bring claims against General R.V. for breach of contract and warranty, breach of the implied warranty of merchantability, and breach of the implied warranty for a particular purpose, all pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and FLA. STAT. ANN. § 320.838. Id. at ¶¶ 55-84. The Carriggs also assert claims against General R.V. for violation of Florida's Unfair and Deceptive Trade Practices Act (FDUTPA), FLA. STAT. ANN. § 501.201 et seq., and fraudulent misrepresentation under Florida law. Id. at ¶¶ 85-97.

In response, General R.V. filed the Motion currently before the Court, arguing in part, that the case should be transferred to the United States District Court for the Eastern District of Michigan. Motion at 2. In doing so, General R.V. notes that the Nov. 21, 2016 Purchase Agreement executed between the Carriggs and General R.V. contains a forum selection clause directing that any and all potential disputes between the parties must be filed in Oakland County, Michigan. Id.[4]

In the Motion, General R.V. notes that the first page of the Nov. 21, 2016 Purchase Agreement contains the following language:

> BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS OF THIS AGREEMENT INCLUDING THOSE PRINTED ON THE REVERSE

---

[4] General R.V. relies on the Affidavit of Craig Williamson in which Williamson identifies and attaches a copy of the Nov. 21, 2016 Purchase Agreement. See Doc. 6-1 (Williamson June 19, 2018 Declaration). Because the copy of the Nov. 21, 2016 Purchase Agreement attached to the Williamson June 19, 2018 Declaration is the same as that attached to the Carriggs' Complaint, the Court will cite to the latter.

SIDE, WHICH INCLUDE . . . CHOICE OF LAW, AND FORUM SELECTION CLAUSES INDICATING THAT MICHIGAN LAW APPLIES TO ALL POTENTIAL DISPUTES AND THAT ALL CLAIMS MUST BE FILED IN MICHIGAN.

Doc. 1-2 (Nov. 21, 2016 Purchase Agreement). Both Everette and Patsy Carriggs' signatures appear below this language. Id. Paragraph two on the back side of the first page of the Nov. 21, 2016 Purchase Agreement reads:

> APPLICABLE LAW: CHOICE OF LAW: FORUM SELECTION – MICHIGAN: . . .
> . . . . Should any dispute arise out of, or relate to, this Agreement, the RV sold pursuant to this Agreement, and/or service work on the RV, those disputes shall be governed by the substantive laws of the state of Michigan, without regard to conflict of law rules. This means that if Purchaser files a claim against Dealer regarding anything with the RV, Michigan law will control that claim. In addition, Purchaser agrees that the exclusive jurisdiction for deciding any dispute shall be in Oakland, County, Michigan, and Purchaser will file any claim in Oakland County, Michigan. . . .

Id. at 3. The Nov. 21, 2016 Purchase Agreement also states:

> MEDIATION OR PRE-LITIGATION DISPUTE RESOLUTION:
> Although Purchaser understands that if Purchaser files a claim against Dealer it must be filed in Oakland County, Michigan, Purchaser also understands that Dealer may be open to pre-litigation Mediation and/or other forms of Alternative Dispute Resolution if Purchaser is. Purchaser should contact Dealer to discuss this before filing a lawsuit in Oakland County, Michigan.

Id.

In conjunction with their purchase, the Carriggs signed an additional form providing that Michigan law would control any disputes between the parties, and that any such dispute would be resolved in Michigan. See Williamson June 19, 2018 Declaration at 10 ("As Is," Warranty Disclaimer, and Forum Acknowledgment Form). In particular, the form stated:

> . . . I understand that General R.V. and I have agreed that if any disputes arise between us regarding the RV I am purchasing they will be resolved by

> way of a claim in Oakland County, Michigan, with Michigan law applying, per the terms of our Purchase Agreement. . . . . General R.V has answered all of my questions regarding my purchase to my satisfaction. I am satisfied with the RV's current condition, and have read and understand this document.

Id. Both Everette and Patsy Carrigg signed the form. Finally, Everette Carrigg initialed and signed a truth in lending act form which stated as follows:

> I received the fully completed contract and was allowed the necessary and requested amount of time to review its contents . . . before I was asked to sign the agreement.
> All of my questions regarding the sales agreement were answered to my satisfaction before I was asked to sign the sales agreement.
> I did not have any questions regarding the sales agreement and signed the agreement willingly.
> I received a completed copy of the sales agreement to keep in my possession, which I willingly signed after its terms and contents were presented to me.
> I fully understand the terms and conditions of the sales agreement presented to me.

Doc. 17-1 at 4 (Williamson Aug. 8, 2018 Declaration, Truth in Lending Act Form).

The Carriggs do not dispute the existence of the forum selection clause in the Nov. 21, 2016 Purchase Agreement, nor do they dispute that they signed documents affirming the same. Rather, they assert that throughout their dealings with General R.V., the dealership placed a "big stack of papers in [their] faces and told [them] to sign the forms," and that they "did not have time to read all the pages of the contract or the forms that were shoved in [their faces.]" Doc. 14 at ¶¶ 19, 21 (Patsy Carrigg Affidavit). Moreover, when they signed

> the contracts and all the papers that [General R.V.] pushed into [their faces] to sign, [they] did not know that [they] signed a forum agreement. . . . [They] did not know what a forum selection agreement was, and [they] never knew that [they] had signed [General R.V.'s] forum selection. The forum selection agreement was obtained by [General R.V.] by trickery and fraud . . . .

Id. at ¶¶ 43, 45-46. Additionally, the Carriggs assert that they "do not have the money to pay attorneys to keep representing [them] in this case or pay attorneys and litigation expenses, in the State of Michigan." Id. at ¶ 52. Given their age, "infirmities and lack of financial resources," they contend "it will be an undue financial burden, and impossible for [them] to litigate this case in the State of Michigan." Id. at ¶ 53.

## II. Summary of Arguments

General R.V. argues that the forum selection clause in the Nov. 21, 2016 Purchase Agreement requires that this case be transferred to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). Motion at 2. It contends that the forum selection clause is valid and enforceable; the clause is mandatory; and no unusual circumstances exist to justify diverting from the clause's terms. Id. at 5-9. General R.V. alternatively asserts that if the Court does not transfer the action, the Court should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3) (Rule(s)), and 28 U.S.C. § 1406, for improper venue. Id. at 10-11.

In their response, the Carriggs contend the forum selection clause is not enforceable. First they contend that the forum selection clause was obtained by General R.V. through fraudulent means because the Carriggs allegedly did not know that they signed a document with a forum selection clause. Response at 5-6. Second, they argue that public policy factors weigh against transferring the case, as a transfer would prevent them from pursuing rights and remedies available to them under Florida law. Id. at 6-8. Finally, the Carriggs assert that extraordinary circumstances exist to warrant not transferring this matter, as they are both "elderly, infirmed [sic] and poor consumers." Id. at 8.

In its Reply, General R.V. argues that the Carriggs have failed to establish any factual basis for their claim that General R.V. included, by fraudulent means, a forum selection clause into the parties' sales agreement. Reply at 3-6. It also asserts that the Court should disregard the Carriggs' claims of "advanced age and lack of resources." Id. at 6-7. As such, General R.V. contends that the Court should enforce the forum selection clause in the parties' Nov. 21, 2016 Purchase Agreement and transfer this case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). Reply at 9.

### III. Applicable Law

In considering whether to transfer a case pursuant to § 1404(a), the district court must engage in a two-step inquiry. See Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000); Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). The court must first determine, as a threshold matter, whether the case might have been filed in the proposed district, or whether all parties have consented to suit in that district. See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., No. 8:06-CV-1746-T-27MAP, 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006);[5] see also Colo. Boxed Beef Co. v. Coggins, No. 8:07-cv-00223-T-24MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007); 28 U.S.C. § 1404(a) (2011). Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." Eye Care Int'l, Inc., 119 F. Supp. 2d at 1318; see also Bookworld Trade, Inc., 2006 WL 3333718, at *1. In doing so, the court traditionally

---

[5] In citing to Bookworld Trade, Inc., the Court notes that although an unpublished opinion is not binding, it is persuasive authority. United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally FED. R. APP. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

evaluates a number of factors.[6]  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Colo. Boxed Beef Co., 2007 WL 917302, at *3 (detailing the factors to be considered in determining whether a transfer is appropriate under § 1404(a)) (quoting Manuel, 430 F.3d at 1135 n.1).

Under § 1404(a), a trial court has broad discretion in determining whether a transfer is appropriate.  See Stewart Org., Inc., 487 U.S. at 29; Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999).  However, the Supreme Court has directed that when parties have agreed to a mandatory forum selection clause, the court's analysis is significantly narrowed.  See Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 517 U.S. 49, 62-66 (2013);[7] GDG Acquisitions, LLC v. Govt. of Belize, 749 F.3d 1024, 1028-29 (11th Cir. 2014); Lindner v. BiscayneAmericas Advisors L.L.C., 214 F. Supp. 3d 1307, 1313 (S.D. Fla. 2016); Benjamin Franklin Franchising, LLC v. On Time Plumbers, Inc., No. 8:14-cv-1209-T-30AEP, 2014 WL 4683271, at *6 (M.D. Fla. Sept. 19, 2014).  In this context, a court must first determine whether the forum selection clause is valid and enforceable.  Atlantic Marine Constr. Co., 571 U.S. at 62 n.5; Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009); Messmer v. Thor Motor Coach, Inc., No. 3:16-cv-1510-J-JBT, 2017

---

[6] These factors include the following:
> "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances."

Colo. Boxed Beef Co., 2007 WL 917302, at *3 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

[7] In Atlantic Marine Const. Co., Inc., the forum selection clause before the Supreme Court was mandatory, as noted by the Court when it recited the clause's terms as guiding that "all disputes between the parties 'shall be litigated'" within a specific judicial district.  Atlantic Marine Co., Inc., 571 U.S. at 53 (emphasis added).

WL 933138, at *2-3 (M.D. Fla. Feb. 28, 2017); EWT Holdings, Corp. v. Progressive Global Tech. Inc., No. 06-80054-CIV-DIMITROULEAS/TORRES, 2006 WL 8433634, at *5-6 (S.D. Fla. May 26, 2006). If so, the Supreme Court has instructed that a court evaluating a potential transfer under § 1404(a) should not give any weight to the plaintiff's choice of forum or consider the parties' private interests. See Atlantic Marine Constr. Co., 571 U.S. 63-64. Instead, a court considers only arguments about public-interest factors which rarely will be sufficient to defeat a motion to transfer to the agreed upon forum. Id. at 64. In this regard, the Supreme Court has explained that

> [f]actors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."

Id. at 63 n. 6 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6 (1981)).

The construction of a forum-selection clause is a matter of federal common law. See Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012) ("[T]he construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits."); Emerald Grande, Inc. v. Junkin, 334 F. App'x 973, 975 (11th Cir. 2009); but see Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231 (11th Cir. 2011) (applying the Erie doctrine to determine whether federal or state law governed the enforceability of a forum-selection clause); Martinez v. Bloomberg LP, 740 F.3d 211, 220 (2d Cir. 2014) ("To ensure that the meaning given to a forum selection clause corresponds with the parties' legitimate expectations, courts must apply the law

contractually chosen by the parties to interpret the clause.").[8]  Federal common law, in turn, provides that "forum selection clauses are to be interpreted by reference to 'ordinary contract principles.'"  Cornett, 465 F. App'x at 842. Additionally, forum-selection clauses are to be construed broadly.  See Gen. Pump & Well, Inc. v. Laibe Supply Corp., No. CV607–30, 2007 WL 4592103, at *3 (S.D. Ga. Dec. 28, 2007) (citing Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc), aff'd and remanded on other grounds, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)); see also Digital Envoy, Inc. v. Google, Inc., 319 F.Supp.2d 1377, 1380–81 (N.D. Ga. 2004).

## IV.  Discussion

Having laid out the applicable law, the Court considers the first question in the two-step inquiry regarding transfer of venue under 28 U.S.C. § 1404(a) – whether the case might have been filed in the Eastern District of Michigan, the proposed district.  Here, the Court readily concludes that this suit could have been brought in that district, where General R.V. has its corporate offices.  See 28 U.S.C. § 1391(b)-(c).  Thus, the Court turns to the second question – whether "the transfer would be for the convenience of the parties and witnesses and in the interest of justice." Eye Care Int'l., 119 F. Supp. 2d at 1318.  In doing so, however, the Court confines its analysis in accordance with the Supreme Court's guidance in Atlantic Marine Const. Co.

---

[8] The Court notes that the Nov. 21, 2016 Purchase Agreement does contain a choice of law provision which states that "[s]hould any dispute arise out of, or relate to, this Agreement, the RV sold pursuant to this Agreement, and/or service work on the RV, those disputes shall be governed by the substantive laws of the state of Michigan, without regard to conflict of law rules."  Nov. 21, 2016 Purchase Agreement at 3. However, to the extent that the parties addressed construction of the forum-selection clauses, the parties did so applying only federal law.  See Motion at 5-10; Response at 5-8.  In light of the parties' apparent agreement that federal law applies, and because they do not suggest in any manner that there are any significant differences between federal and Florida and/or Michigan law on this issue, the Court will assume that federal law applies to the interpretation of the forum-selection clause in this case.  See Bailey v. ERG Enters., LP, 705 F.3d 1311, 1320 (11th Cir. 2013); see also Martinez, 740 F.3d at 223.

First, the Court concludes that the forum selection clause at issue in this case is mandatory. A mandatory clause "dictates an exclusive forum for litigation under the contract." See Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1262 n. 24 (11th Cir. 1999)). Mandatory clauses use specific terms of exclusion, such as the word "shall," while "permissive clauses 'contain[] no mandatory language to indicate that the parties meant to foreclose litigation anywhere else.'" LFR Collections LLC v. Taylor, No. 8:11-cv-1117-T24EAJ, 2011 WL 4736360, at *2 (M.D. Fla. Oct. 7, 2011) (alteration in original) (quoting Stateline Power Corp. v. Kremer, 148 F. App'x 770, 771 (11th Cir. 2005)). Here, the language in the forum selection clause is unequivocally mandatory. The clause states that the

> Purchaser agrees that the <u>exclusive jurisdiction</u> for deciding <u>any dispute shall</u> be in Oakland, County, Michigan, and Purchaser will file any claim in Oakland County, Michigan. . . .

Nov. 21, 2016 Purchase Agreement at 3 (emphasis added). This language makes clear that should any dispute arise between the parties, they have agreed that exclusive jurisdiction resides in Oakland County, Michigan, and not anywhere else. Accordingly, the Court determines that the forum selection clause at issue here is mandatory.

The Court next considers whether the forum selection clause is valid and enforceable. See Krenkel, 579 F.3d at 1281; Messmer, 2017 WL 933138, at *2-3; EWT Holdings, Corp., 2006 WL 8433643, at *5-6. The Eleventh Circuit has held that

> [f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a "strong showing" that enforcement would be unfair or unreasonable under the circumstances. A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff

of a remedy; or (4) enforcement of the clause would contravene public policy.

Krenkel, 579 F.3d at 1281 (citations omitted).[9]  Additionally, "[f]or each category, the complaining party bears a heavy burden of demonstrating unreasonableness." Messmer, 2017 WL 933138, at *3 (quoting Davis v. Avvo, Inc., No. 8:10-cv-2352-T-27TMB, 2011 WL 4063282, at *2 (M.D. Fla. Sept. 13, 2011) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 592 (1991)).

Here the Carriggs contend that the forum selection clause "was obtained by fraudulent means" and therefore should be deemed invalid.  Response at 5.  Specifically, they argue that General R.V.'s "sale of the RV was fraudulent in its entirety. . . . [General R.V.'s] agents and financing manager did not tell or inform the Carriggs that they were purchasing a defective, unsafe RV . . . ." Id. at 5-6.  Additionally, the Carriggs contend that

> [u]ntil the inception of the instant lawsuit, the Carriggs never knew that they had signed [General R.V.'s] forum selection agreement. . . . [General R.V.'s] agents and financing managers used their overwhelming bargaining power and placed different contracts and forms in front of the Carriggs for signature.  [General R.V.'s] management told the Carriggs to "sign here."

Id. at 6.  For these reasons the Carriggs argue that the forum selection clause should not be deemed valid or be enforced against them because General R.V. fraudulently included the clause in the Nov. 21, 2016 Purchase Agreement.  These arguments are unavailing.

---

[9] The Court notes that the Eleventh Circuit's test regarding the validity and enforceability of a forum selection clause includes factors, the consideration of which have been neutralized by the Supreme Court in Atlantic Marine Constr. Co.  See Atlantic Marine Constr. Co., 571 U.S. at 63 n. 6.  However, it does not appear that the Eleventh Circuit has addressed this particular tension.  See Messmer, 2017 WL 933138, at *3 n.4 (noting lack of guidance from Eleventh Circuit on interplay of the Atlantic Marine Const. Co. holding and Eleventh Circuit factors for considering the validity of a forum selection clause).  As such, this Court will address the factors identified by the Eleventh Circuit, taking into account the impact of the Supreme Court's ruling in Atlantic Marine Const. Co.

The Carriggs argue that the forum selection clause is invalid because their entire sales transaction with General R.V. was the product of fraud and overreaching. This argument cannot succeed.

> The "fraud or overreaching" that is grounds to deny enforcement of a forum-selection clause pertains to the incorporation of the clause itself. Allegations that the underlying contract was fraudulently induced do not render the forum selection clause unenforceable. If a forum clause were to be rejected whenever a plaintiff asserted a generic claim of fraud in the inducement . . . forum clauses would be rendered essentially meaningless. Instead, for a party to escape a forum selection clause on the grounds of fraud, he or she must show that the inclusion of the clause in the contract was the product of fraud or coercion. By requiring the plaintiff specifically to allege that the choice clause itself is unenforceable, courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties. Absent proof that the forum selection clause is itself the product of fraud, the parties should litigate all claims in the agreed-upon forum.

EWT Holdings, Corp, 2006 WL 8433634, at *5 (internal citations and quotations omitted). As such, the Carriggs cannot challenge the validity of the forum selection clause based on their argument that their entire transaction with General R.V. was obtained through the Defendant's alleged fraud. Rather, the Court's consideration of the Carriggs' argument that the forum selection clause is fraudulent, is limited to the couple's contention that they did not know that the sales agreement included a such a clause.

In this context,

> in determining whether a fraud was overreaching in a non-negotiated forum-selection clause, [the court looks] to whether the clause was reasonably communicated to the consumer. A useful two-part test of "reasonable communicativeness" takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms.

Krenkel, 579 F.3d at 1281; see also Barilotti v. Island Hotel Co. Ltd., No. 13-23672-CIV, 2014 WL 1803374, at *3 (S.D. Fla. May 6, 2014). Here, the record demonstrates that the forum selection clause was reasonably communicated to the Carriggs, the couple had the

ability to become meaningfully and fully informed of the clause, and they had the ability to reject its terms. Krenkel, 579 F.3d at 1281.

The agreement's forum selection clause language appeared on the first page of the two-paged Nov. 21, 2016 Purchase Agreement in all capital letters, directly above where the Carriggs signed the document. November 21, 2016 Purchase Agreement at 2.[10] Likewise, the forum selection clause language also appeared in more detail on the back page of the Nov. 21, 2016 Purchase Agreement. Id. at 3. The Carriggs also signed several additional documents affirming that they were aware they had agreed to a forum selection clause; that they were given sufficient time to review the terms of the Nov. 21, 2016 Purchase Agreement; that if they had any questions regarding the terms of the Nov. 21, 2016 Purchase Agreement, General R.V. answered those questions; and that they fully understood the terms of the Nov. 21, 2016 Purchase Agreement. See Williamson June 19, 2018 Declaration, "As Is," Warranty Disclaimer, and Forum Acknowledgment Form; Williamson Aug. 8, 2018 Declaration, Truth in Lending Act Form. Consequently, the Court determines that the forum selection clause was reasonably communicated to the Carriggs, they were provided an opportunity to become fully informed of the clause, and they had the ability to reject its terms. Krenkel, 579 F.3d at 1281.

Moreover, the Court is unpersuaded by the Carriggs' argument that they did not know that they had agreed to a forum selection clause. The law is clear that when a party signs an instrument, that party is presumed to be informed of its contents, irrespective of the party's argument that he or she did not read the document. See e.g., Regions Bank v. Hyman, 91 F. Supp. 3d 1234, 1255 (M.D. Fla. 2015); Barber v. Am.'s Wholesale

---

[10] This language also appeared in the same location, and was presented in the same format, on the Nov. 11 Contract the Carriggs signed. See Nov. 11, 2016 Contract.

Lender, No. 8:12-CV-01124-T-27TBM, 2013 WL 1149316, at *3 n.7 (M.D. Fla. Mar. 19, 2013); Webimax, LLC v. Johnson, No. 3:11-CV-993-J-34JBT, 2013 WL 497843, at *4 (M.D. Fla. Jan. 11, 2013), report and recommendation adopted, No. 3:11-cv-993-J-34JBT, 2013 WL 489134 (M.D. Fla. Feb. 8, 2013); Mays v. Keiser Sch., Inc., No. 10-61921-CIV, 2011 WL 1539675, at *1 (S.D. Fla. Mar. 31, 2011), report and recommendation adopted, No. 10-61921-CIV, 2011 WL 1496774 (S.D. Fla. Apr. 19, 2011); Citibank v. Dalessio, 756 F. Supp. 2d 1361, 1367–68 (M.D. Fla. 2010); Earl Pegues, L.L.C. v. Izis Gen. Contractors, L.L.C., No. 327931, 2016 WL 5887831, at *3 (Mich. Ct. App. Oct. 6, 2016); Hastings City Bank v. Jackson Nat. Life Ins. Co., No. 251865, 2005 WL 602567, at *2 (Mich. Ct. App. Mar. 15, 2005). The Carriggs, having signed documents containing the forum selection clause, and also having signed any number of documents acknowledging the existence of the forum selection clause and of their knowledge and assent thereof, cannot now argue that General R.V. imposed the clause upon them by some means of fraud.

The Court also finds unavailing the Carriggs' argument that because they are "elderly, infirmed [sic] and poor customers," Response at 8, and because it would be "impossible for [them] to litigate this case in the State of Michigan," Patsy Carrigg Affidavit at ¶ 53, it would be inconvenient and unfair to hold them to the terms of the forum selection clause. The Supreme Court's decision in Atlantic Marine Constr. Co. precludes this Court's consideration of such an argument. In Atlantic Marine Constr. Co., the Supreme Court stated that

> a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less

> convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but instructive context whatever "inconvenience" the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting.

Atl. Marine Const. Co., 571 U.S. at 64 (internal citations, quotations, and alterations omitted). See also Margolis v. Warner Chilcott (US), LLC, No. 16-23891-Civ-WILLIAMS/TORRES, 2017 WL 9324774, *3 (S.D. Fla. June 14, 2017) ("the financial difficulty that a party might experience in litigating in a forum is not a sufficient factor – by itself – for refusal to enforce a valid forum-selection clause"); Yakich v. Verathon, Inc., No. 8:16-cv-2246-T-17JSS, 2017 WL 3113467, at *3-4 (M.D. Fla. Mar. 9, 2017) (noting that where there is a forum selection clause, the Court "disregards any arguments about the parties' private interests" and that financial difficulty in litigating in the chosen forum is not sufficient); Loeffelholz v. Ascension Health, Inc., 34 F. Supp. 3d 1187, 1190 (M.D. Fla. 2014) (neither financial hardship nor economic disparity between the parties constitute sufficient grounds to disregard a valid forum selection clause). Accordingly, consistent with Atlantic Marine Const. Co., the Court considers the private interest factors to weigh "in favor of the preselected forum." Atlantic Marine Const. Co., 571 U.S. at 64. And, as such, finds the Carriggs' arguments regarding how the forum selection clause affects their personal interests to be unavailing.

The Carriggs' last argument in opposition to General R.V.'s Motion to Transfer Venue tracks the final two factors articulated by the Eleventh Circuit in Krenkel, 579 F.3d at 1281,[11] and is consistent with the Supreme Court's ruling that in the presence of an

---

[11] Those factors inquire into whether "the chosen law would deprive the plaintiff of a remedy; or [whether] enforcement of the clause would contravene public policy." Krenkel, 579 F.3d at 1281 (citations omitted).

enforceable forum selection clause, "a district court may consider arguments about public-interest factors only." Atlantic Marine Const. Co., 571 U.S. at 64. See also Ashbritt, Inc. v. Bi-Jim Const. Co, Inc., No. 18-cv-60265-GAYLES/SELTZER, 2018 WL 2134062, at *2-3 (S.D. Fla. May 9, 2018); Margolis, 2017 WL 9324774, at *2; Messmer, 2017 WL 933138, at *2. In this instance, the Carriggs contend that the forum selection clause has the effect of stripping the Carriggs and other consumers like them "of their legal rights and remedies under Florida state laws." Response at 6. Specifically, they argue that transferring this case to the Eastern District of Michigan would undermine the effectiveness of Florida's consumer protection laws and that

> bottom line: The State of Michigan courts will not give proper deference to Florida laws. If this case is litigated in the State of Michigan, the Carriggs would be deprived of the remedies provided under Florida laws. The Michigan courts will not show deference to the Carriggs' breach of warranty claims under the Magnusson Moss Warranty Act and [other Florida consumer protection laws], and the Carriggs' entitlement to the reimbursement of their attorney's fees, costs, and expenses under these respective consumer laws.

Response at 7-8. However, aside from these broad and conclusory allegations, the Carriggs have not presented anything of substance, legally or factually, to support the assertion that a Michigan venue would deprive them of any rights available under FDUTPA. At most, they fleetingly refer to Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc., 743 So. 2d 627 (Fla. 1st Dist. Ct. App. 1999), a decision in which a Florida appellate court, in the context of a FDUTPA claim, declined to transfer venue despite the existence of an otherwise valid forum selection clause. Id. at 632-33. However, "Florida state courts interpreting Mgmt. Computer Controls, Inc. have rejected the idea that such a case created a per se rule against enforcing a forum selection clause as to FDUTPA claims." Am. Residential Equities, LLC v. Del Mar Datatrac, Inc., No. 08-20014-CIV, 2008

WL 11333097, at *3 (S.D. Fla. Mar. 13, 2008) (citing Florida cases rejecting <u>per se</u> rule against enforcing a forum selection clause in the context of FDUTPA claims). Moreover, federal courts have generally declined to rule that a state based consumer protection claim is sufficient to override the existence an otherwise valid forum selection clause. <u>See e.g.</u>, <u>Davis v. Avvo, Inc.</u>, No. 8:10-cv-2352-T-27TBM, 2011 WL 4063282, at *4 (M.D. Fla. Sept. 13, 2011) (enforcing forum selection clause even in presence of FDUTPA claims); <u>Pronto Cash of Fla., Inc. v. Digital Currency Sys.</u>, No. 06-21916-CIV-HUCK/SIMONTON, 2006 WL 8432522, at *6 (S.D. Fla. Nov. 28, 2006) (noting "numerous cases containing FDUTPA claims have been transferred outside of Florida in their entirety where the parties to the dispute entered into an agreement containing a forum selection clause"); <u>Pods, Inc. v. Paysource, Inc.</u>, No. 8:05-cv-1764-T-27EAJ, 2006 WL 1382099, at *4 n.5 (M.D. Fla. May 19, 2006) (Florida residents' interest in seeking that violations of a FDUTPA claim be redressed "are not sufficient to overcome [a] forum selection clause."); <u>Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC</u>, No. 05-61955-Civ-COHN/SNOW, 2006 WL 8432532, at *2 (S.D. Fla. Apr. 11, 2006) (disregarding "hesitancy of Florida state courts to ignore forum selection clauses in FDUTPA actions"). Indeed, federal courts are routinely called upon to interpret and apply the laws of other states. In sum, the Carriggs present no basis for this Court to conclude that a Michigan district court would be unable or unwilling to properly address their FDUTPA claims.

Here, the Carriggs have failed to establish that this case presents extraordinary or unusual circumstances warranting the Court's disregard of the parties' contractual forum selection clause. The forum selection clause is mandatory, valid, and enforceable. Applying the Supreme Court's ruling in <u>Atlantic Marine Const. Co.</u>, the Carriggs' private

interest arguments are unavailing and the public interest factors they raise are insufficient to defeat General R.V.'s Motion to Transfer to the otherwise agreed upon selected forum. See e.g. Ashbritt, Inc., 2018 WL 2134062, at *3 (even though case presented some issues governed by law from different jurisdiction, case did not present unusual or extraordinary circumstances to warrant departing from forum selection clause); Guest Assoc., Inc. v. Cyclone Aviation Prods., Ltd., 30 F. Supp. 3d 1278, 1285 (N.D. Ala. 2014) (none of public interest factors rose to the level of being so unusual as to justify ignoring parties' forum selection clause). Cf. D/H Oil & Gas Co. v. Commerce & Indus. Ins. Co., No. 3:04-CV-448-RV/MD, 2005 WL 1153332, at *5-8 (N.D. Fla. May 9, 2005) (case presented unusual circumstances warranting not complying with forum selection clause where state had interest in having claim regarding natural resources and environmental protections addressed in local forum).[12] As such the Motion is due to be granted.

Accordingly, it is

**ORDERED:**

1. Defendant General R.V. Center, Inc's Motion to Transfer Venue, or in the Alternative, Motion to Dismiss and Memorandum of Law in Support (Doc. 6), is **GRANTED** to the extent that the Clerk of the Court is **DIRECTED** to transfer this action to the United States District Court of the Eastern District of Michigan, terminate all pending motions, and close the file.

---

[12] Having concluded that the forum selection clause at issue in this case is valid and enforceable, and thereby warranting transfer, the Court need not address General R.V.'s arguments to dismiss this case pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406, for improper venue. Motion at 10-11.

2. To the extent Defendant seeks dismissal of this action under Rule 12(b)(3), the Motion is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of November, 2018.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:
Counsel of Record