| | |
|---|---|
| **EVERETTE L. CARRIGG, PATSY O. CARRIGG,** | 18-cv-13538 |
| Plaintiffs, | HON. TERRENCE G. BERG |
| v. | |
| **GENERAL R.V. CENTER, INC., CORNERSTONE UNITED, INC., THE HUNTINGTON NATIONAL BANK** | **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiffs Everette L. Carrigg and Patsy O. Carrigg purchased a used recreational vehicle ("RV") from Defendant General R.V. Center, Inc. ("General RV"). According to the Carriggs, shortly after they purchased the RV, it became clear the vehicle was defective and not safe for its intended use. Plaintiffs are now asserting claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, breach of express and implied warranties, fraudulent misrepresentation, and breach of contract. The case is before the Court on motions for summary judgment filed by General RV and by Defendant Cornerstone United, Inc., a party to the service contract Plaintiffs purchased through General RV. ECF Nos. 22, 23. For reasons explained below, the Court will grant

Cornerstone's and General RV's motions for summary judgment.

## BACKGROUND

In late 2016, Plaintiffs Everett Carrigg and Patsy Carrigg, a retired couple in their mid-to-late 70's, purchased a used 2013 Thor Challenger recreational vehicle ("RV") from Defendant General R.V. Center, Inc. ("General RV"). ECF No. 16, PageID.494 (Am. Compl.). As part of the sale, Plaintiffs traded in their old RV and agreed to pay an additional $62,228.33. *Id.* at PageID.496*;* ECF No. 22-1, PageID.562 ("Purchase Agreement"). Along with the Thor Challenger RV, they also purchased a three-year service warranty serviced by Cornerstone United, Inc. ECF No. 16, PageID.494. Plaintiffs contend that throughout the process of purchasing the RV a General RV salesman, Julius "Juice" Tatum, as well as other agents of General RV—including a sales manager, financing manager, general manager, and service manager—made misrepresentations about the condition and quality of the RV, as well as the applicable warranties. ECF No. 16, PageID.496; ECF No. 29-2, PageID.722–23 (Patsy Carrigg Aff.). These alleged misrepresentations, which Plaintiffs say they relied on to their detriment, form the basis of this lawsuit.

According to Plaintiffs, representatives of General RV on multiple occasions averred that the RV they ultimately purchased was in excellent condition and "came with the remainder of a 10-year manufacturer's bumper-to-bumper factory warranty that specifically covered any

structural defects." ECF No. 16, PageID.496; ECF No. 29-2, PageID.722–23. Contrary to General RV's alleged representations that the vehicle was "like new" at the time of purchase, Plaintiffs contend the RV had "major structural damage" and, as they later claim to have discovered, had previously been totaled and its chassis replaced with a salvage chassis. ECF No. 16, PageID.497; ECF No. 29-2, PageID.730. The advertised "bumper-to-bumper" manufacturer's warranty had in fact expired in 2014, two years before Plaintiffs purchased the vehicle. ECF No. 35, PageID.1005 (Celina Tyler Aff.). Plaintiffs further urge that representatives of General RV misrepresented the scope of the three-year Cornerstone warranty they purchased at the dealership, reassuring them that the warranty would cover any needed repairs to fix structural or mechanical problems with the vehicle. ECF No. 29-2, PageID.724. Essentially, Plaintiffs maintain that General RV's salesman and managers made express oral representations to them about the condition of the vehicle and the manufacturer's warranty, that those representations were false, and that Plaintiffs relied on them to their detriment.

The purchase agreement governing the RV's sale is a two-sided document with an "all-caps" integration clause above the purchasers' signature line explaining that the written agreement contains the entire agreement between Plaintiffs and General RV. ECF No. 22-1, PageID.562. That provision also alerts signatories to other terms and

conditions contained in the agreement—including an "as is" and exclusion of warranties provision located on the reverse side of the agreement. *Id*. The integration clause reads:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER. NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT. NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE, WHICH ARE NOT CONTAINED ON THIS DOCUMENT. PURCHASER HAS NOT RELIED ON ANYTHING NOT WRITTEN INTO THIS PURCHASE AGREEMENT SUCH THAT NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV, EVEN IF ALLEGED TO BE A MISREPRESENTATION. BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS OF THIS AGREEMENT, INCLUDING THOSE PRINTED ON THE REVERSE SIDE, WHICH INCLUDE AN "AS IS" CLAUSE, A NON-REFUNDABLE DEPOSIT STATEMENT, AND A CHOICE OF LAW AND FORUM SELECTION CLAUSES INDICATING THAT MICHIGAN LAW APPLIES TO ALL POTENTIAL DISPUTES AND THAT ALL CLAIMS MUST BE FILED IN MICHIGAN.

ECF No. 22-1, PageID.562.

The "as is" purchase warning and express exclusion of warranties on the reverse side of the agreement states:

> **<u>EXCLUSION OF WARRANTIES, "AS IS" PURCHASE</u>**
> PURCHASER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THIS RV, BUT

THAT THESE WARANTIES ARE OFFERED BY THE MANUFACTURER OF THE RV.... PURCHASER UNDERSTANDS THAT DEALER OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV. **THIS RV IS SOLD "AS IS" BY DEALER, AND DEALER DISCLAIMS ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**. This document is not a warranty and nothing that Dealer says or does creates a warranty.... This is true even if Purchaser purchases a service contract.... Also, since Dealer provides no warranties from Dealer, any written warranty from a manufacturer of the vehicle or its components is Purchaser's sole and exclusive remedy for any problem that Purchaser may have with the vehicle or any appliance or component.

ECF No. 22-1, PageID.563. This "as is" provision is the eleventh of sixteen different terms and conditions described on the reverse side of the purchase agreement:

11. **EXCLUSION OF WARRANTIES, "AS IS" PURCHASE**
PURCHASER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THIS RV, BUT THAT THESE WARRANTIES ARE OFFERED BY THE MANUFACTURER OF THE RV, ITS COMPONENTS AND/OR ITS APPLIANCES. THESE WARRANTIES HAVE BEEN PROVIDED TO PURCHASER, AND PURCHASER HAS READ AND UNDERSTANDS THESE WARRANTIES. PURCHASER UNDERSTANDS THAT DEALER OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV. **THIS RV IS SOLD "AS IS" BY DEALER, AND DEALER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**. This document is not a warranty and nothing that Dealer says or does creates a warranty, including any pre-delivery inspection. This is true even if Purchaser purchases a service contract, and Paragraphs 11-13 apply fully even if Purchaser purchases a service contract. Also, since Dealer provides no warranties from Dealer, any written warranty from a manufacturer of the vehicle or its components is Purchaser's sole and exclusive remedy for any problem that Purchaser may have with the vehicle or any appliance or component.

The font, which is small and somewhat difficult to read, appears to be no larger than that used for other provisions on this same page of the purchase agreement, though portions of the "as is" disclaimer are capitalized, and some parts both capitalized and bolded. ECF No. 22-1, PageID.563. No other provision in the purchase agreement is both capitalized and bolded. *See id.*

Plaintiffs also signed a separate General RV "as is" and warranty

disclaimer form, thereby again acknowledging that the RV was purchased "as is" and that the two-sided purchase agreement is "the only document that contains the terms and conditions of [the] agreement with General RV." ECF No. 22-1, PageID.565. The form uses the phrase "as is" in its title and capitalizes, bolds, and underlines that term:

**GENERAL RV "AS IS" and WARRANTY DISCLAIMER FORM, and ACKNOWLEDGMENT OF MICHIGAN LAW AND MICHIGAN FORUM CONTROLLING**

**"AS IS":** I understand that I am purchasing this vehicle **"AS IS"** from General RV. I understand that the 2-sided Purchase Agreement I signed with General RV is the only document that contains the terms and conditions of my agreement with General RV, even though I may have executed a financing agreement. Additionally, I understand that I do not have the right to revoke or rescind this contract or return the RV and receive my money back, as I purchased the RV **"AS IS"** from General RV with an **"AS IS"** Purchase Agreement.

*Id.* The same warranty disclaimer former also includes an additional exclusion of warranties provision which Plaintiffs signed, affirming:

> "I understand that **GENERAL RV OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV AND THAT I AM PURCHASING THE RV "AS IS" FROM GENERAL RV. GENERAL RV DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**"

ECF No. 22-1, PageID.565; *see also* ECF No. 22-1, PageID.569–70 (General RV Service Call Agreement) ("General RV Center has sold the unit to you "AS IS" and does not issue any warranties whatsoever either express or implied. All warranties received by you are solely issued by the manufacturer of your recreational vehicle/unit.").

According to the amended complaint, Everette Carrigg is "not

functionally literate" and therefore "could not understand the terms of the documents he signed and initialed at General RV." ECF No. 29-2, PageID.722. Patsy Carrigg apparently also has poor eyesight—she has had two surgeries on her eyes and continues to be treated for vision issues. ECF No. 29-2, PageID.721. Despite these limitations Plaintiffs signed several forms, including the purchase agreement, in the process of purchasing their RV. ECF 22-1, PageID.4–5. Everette Carrigg, the primary buyer, also signed an additional acknowledgment averring that he had received the purchase agreement, "was allowed the necessary and requested amount of time to review its contents" and "fully underst[ood] the terms and conditions." ECF No. 22-1, PageID.571. Yet Plaintiffs allege that General RV rushed them through the sales process, without any meaningful opportunity to review the paperwork or to examine the "fine print," which Patsy Carrigg found difficult to read (and Everett Carrigg apparently could not read at all). ECF No. 16, PageID.499; ECF No. 29-2, PageID.722, 724.

After purchasing the RV, Plaintiffs claim they immediately discovered it was "mechanically unsound, unsafe to drive, and did not conform to the representations that [General RV] had made." ECF No. 16, PageID.503; ECF No. 29-2, PageID.726–27. Repairs were needed at the outset, according to Plaintiffs, to address the following problems: broken driver's seat; defective step control modules; seeping jack seals; malfunctioning R/R thermistor, camera, radio and monitors; and an

unsealed or leaking toilet. ECF No. 16, PageID.503; ECF No. 29-2, PageID.726–27. Plaintiffs also brought their recently purchased RV back to the General RV service department to address a litany of more serious structural and mechanical problems, including a windshield that popped out of the vehicle, a defective leveling device, a malfunctioning awning system, and unstable interior walls. ECF No. 16, PageID.504; ECF No. 29-2, PageID.727. But General RV then explained that there was in fact no manufacturer's warranty on the vehicle and apparently declined to make the repairs Plaintiffs requested, or at least to do so free of charge. ECF No. 16, PageID.505–06. Likewise, General RV refused to let Plaintiffs trade in the apparently defective RV for a different, similarly priced one. ECF No. 16, PageID.506.

Plaintiffs assert they have been left with a worthless RV along with an equally ineffective manufacturer's warranty and service contract. ECF No. 29-02, PageID.26. Seeking relief from this court, they now claim that: (1) General RV breached implied warranties inherent in the sale of any good; (2) General RV breached express warranties it made to Plaintiffs about the condition of the Thor RV, the existence of a manufacturer's warranty, and General RV's commitment to fulfilling the Cornerstone service contract; (3) General RV breached warranties and employed deceptive practices in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (4) General RV made fraudulent misrepresentations to them regarding the condition of the Thor RV; and

(5) Cornerstone breached its service contract by failing to repair the RV. ECF No. 16, PageID.19-27.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue

of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## I. Cornerstone's motion for summary judgment

Plaintiffs' only claim against Cornerstone is for breach of contract in connection with Cornerstone's alleged failure to repair their RV. They assert that Cornerstone was required to make these repairs under the service contract they purchased through General RV. But the plain language of the contract provides that Cornerstone was only obligated to *pay* authorized service centers to make covered repairs to the RV—not to make those repairs itself. *See* ECF No. 30-3, PageID.830 (Cornerstone Contract). Even if the Court construes Plaintiffs' "failure to repair" claim as one for failure or refusal by Cornerstone to pay for needed repairs (rather than to make repairs itself), as Plaintiffs request, the record shows Cornerstone in fact paid each claim it received related to Plaintiffs' RV. Because the undisputed material facts demonstrate that Cornerstone performed its obligations under the service contract, the Court must grant summary judgment in favor of Cornerstone on Plaintiffs' claim for breach of contract.

The elements of a claim for breach of contract under Michigan law are: "(1) that there was a contract, (2) that the other party breached the

contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Lossia v. Flagstar Bancorp, Inc.*, No. 15-12540, 2016 WL 520867, *2 (E.D. Mich. Feb. 10, 2016) (quoting *AFT Mich. v. Michigan*, 846 N.W.2d 583, 590 (Mich. Ct. App. 2014)). Plaintiffs purchased their Cornerstone service contract from General RV the same day they purchased their vehicle. ECF No. 23-1, PageID.630. Although the contract was purchased through General RV, it makes clear that it is an agreement between Plaintiffs and Cornerstone only. *See* ECF No. 23-1, PageID.630 ("This Contract is between You and the Obligor (hereinafter referred to as We, Us, and Our) – Cornerstone United Administrative Services, Inc."). General RV is not a party to the contract and the contract did not establish any warranty by or service contract with General RV. *See* ECF No. 30-3; *Chaudoin v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803, at *14 (E.D. Mich. Aug. 15, 2017) (examining an apparently identical Cornerstone service contract in a similar case and determining that it established no obligation on the part of General RV). Under the service contract Plaintiffs signed, Cornerstone was required only to reimburse Plaintiffs for covered repairs to the RV completed by authorized service centers. *See* ECF No. 30-3, PageID.830– 35. Plaintiffs were not required to have their RV serviced at General RV and in fact could have gone to any authorized service dealer for repairs. *See* ECF No. 35, PageID.1002. The record is unclear as to why Plaintiffs did not seek to have repairs performed by other service centers under the

Cornerstone warranty, if General RV refused to help them.

Four different claims were submitted to Cornerstone for repairs to Plaintiffs' vehicle, all of which were completed at General RV. ECF No. 23-1, PageID.632–39. Claim detail summaries produced by Cornerstone establish that it in fact paid each of these four claims. *See* ECF No. 23-1, PageID.632–39; ECF No. 35, PageID.1001 (Frank Caballero Aff.) ("CornerStone had performed under the service contract on each occasion where a claim for benefits was made to CornerStone on behalf of Mr. and Mrs. Carrigg."). Cornerstone paid each of Plaintiffs' claims in full, minus a $150 deductible. ECF No. 23-1, PageID.632–39. Though Plaintiffs contend that "Cornerstone failed or refused to pay for the needed repairs to the RV," they have produced no evidence to support this assertion. ECF No. 30, PageID.800. The evidentiary record therefore does not suggest that Cornerstone in any way breached its obligations to Plaintiffs under the service contract.

Another argument Plaintiffs raise in opposition to Cornerstone's summary judgment motion is that the service contract "appears to be void *ab initio*" because it states that coverage will not be available "[i]f the original warranty has ever been voided by the manufacturer." ECF No. 30, PageID.799–800 (Plaintiffs' Resp. Br.); ECF No. 30-3, PageID.831 (Cornerstone Contract). Plaintiffs assert that the original manufacturer's warranty on Plaintiffs' RV had in fact been voided. ECF No. 30, PageID.799–800 (Plaintiffs' Resp. Br.). But Plaintiffs have not produced

evidence in support of their argument that the manufacturer's warranty or Cornerstone service contract was ever voided. According to the text of the service contract, the agreement with Cornerstone remains in force and will not expire until November 20, 2019. ECF No. 30-3, PageID.830 (Cornerstone Contract); ECF No. 35, PageID.1002 (Frank Caballero Aff.). Further, General RV has provided an affidavit by a consumer affairs manager at Thor Motor Coach, Inc., manufacturer of the RV at issue, averring that the manufacturer's warranty was provided only to the RV's initial purchaser and was valid just "for 12 months or 15,000 miles on the covered portions of the house portion of the motorhome, and for 24 months or 24,000 miles on the steel or aluminum frame structure, only." ECF No. 35, PageID.1004–05 (Celina Tyler Aff.). The manufacturer's warranty thus had expired before Plaintiffs purchased the RV. *Id.* It was not voided. *Id.* Besides, if the Cornerstone service contract *was* void *ab initio*, as Plaintiffs argue, their claim for breach of contract against Cornerstone would necessarily fail. The existence of a contract is a required element for breach of contract. *AFT Mich.*, 846 N.W.2d at 590.

Because the undisputed material facts demonstrate that Cornerstone paid in full each of the claims it received for covered repairs to Plaintiffs' RV and thereby fulfilled its obligations under the service contract, Plaintiffs have failed to establish a genuine issue of material fact as to whether Cornerstone breached the terms of the contract. ECF No. 23-1, PageID.632–39. On this basis, summary judgment will be

granted in favor of Cornerstone on Plaintiffs' breach of contract claim.

## II.   General RV's motion for summary judgment

Plaintiffs assert several claims against Defendant General RV for breach of implied and express warranties, related violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., and for fraudulent misrepresentation. General RV asserts that it is entitled to summary judgment on these claims because Plaintiffs purchased the RV "as is," with all warranties disclaimed by the purchase agreement. The Court agrees and will accordingly grant General RV's motion for summary judgment.

### A. Violation of implied warranties

Every contract for the sale of goods includes implied warranties of merchantability and fitness for a particular purpose, unless the warranty is excluded or modified. *Lumber Mut. Ins. Co. v. Clarklift of Detroit, Inc.*, 569 N.W.2d 681, 682 (Mich. Ct. App. 1997) (per curiam) (citing Mich. Comp. Laws §§ 440.2314, 440.2315); *Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890, 895 (Mich. Ct. App. 2006). Implied warranties may "be negated by contrary contractual terms meeting the requirements of [Mich. Comp. Laws § 440.2316(2), (3)]." *Rokicsak v. Colony Marine Sales and Serv., Inc.*, 219 F. Supp. 2d 810, 815 (E.D. Mich. 2002) (quoting *McGhee v. GMC Truck & Coach Div.*, 296 N.W.2d 286, 289 (Mich. Ct. App. 1980)). Under Mich. Comp. Laws § 440.2316, "unless the circumstances indicate otherwise, all implied warranties are excluded by

expressions like 'as is', 'with all fault' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." Additionally, "[t]o exclude or modify the implied warranty of merchantability . . . the [disclaimer] language must mention merchantability and in case of a writing must be conspicuous." Mich. Comp. Laws § 440.2316(2). Likewise, "to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." *Id.* "[A] printed heading in capitals is conspicuous and language in the body of a form is conspicuous if it is larger or in contrasting type or color." *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 1:07-cv-945, 2009 WL 427375, *3 (W.D. Mich. Feb. 20, 2009) (citing Mich. Comp. Laws § 440.1201(j)). The statute goes on to expressly state that language is sufficient to exclude all implied warranties of fitness "if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" *Id.*

Here, the purchase agreement at issue plainly includes language—in bolded, capital letters—expressly warning that "this RV is sold 'as is' by dealer, and dealer disclaims all warranties express or implied, including, but not limited to any implied warranty of merchantability or fitness for a particular purpose." ECF No. 22-1, PageID.563 (Purchase Agreement). This disclaimer specifies the "as is" nature of the sale and, consistent with Michigan law's requirements for disclaimer of the

implied warranty of merchantability, specifically mentions merchantability. *See* Mich. Comp. Laws § 440.2316(2). Further, as required by state law to negate the implied warranties of merchantability and fitness, the disclaimer is conspicuous and in writing. *Id.* The language appears on the reverse side of the relatively concise two-page purchase agreement, in bolded, capitalized, albeit small font. ECF No. 22-1, PageID.563. Further, the same "as is" sale language and exclusion of warranties appears not only in the purchase agreement, but also in the following documents signed by Plaintiffs: (1) "General RV 'As Is' and Warranty Disclaimer Form," ECF No. 22-1, PageID.565; (2) "Delivery Receipt, Storage, Agreement and Risk of Loss Notice and Acknowledgment," ECF No. 22-1, PageID.567; and (3) "Service Call Agreement," ECF No. 22-1, PageID.569. Courts interpreting almost identical warranty disclaimers in cases applying Michigan law have found them sufficient. *See, e.g., Dolores v. General R.V. Center, Inc.*, No. 19-10413, 2019 WL 2601311, at *3 (E.D. Mich. June 25, 2019); *Rokicsak*, 219 F. Supp. 2d at 815; *Pidcock v. Ewing*, 371 F. Supp. 2d 870, 880 (E.D. Mich. 2005); *HRL Land or Sea Yachts*, 2009 WL 427375 at **1–3. Michigan law allows for the disclaimer of implied warranties and the Courts finds that the multiple disclaimers included in the purchase documents at issue (and most critically, in the purchase agreement) are

effective.[1]

Plaintiffs' contention that they were unable to read the text of the purchase agreement and related documents, and were therefore unaware of the warranty disclaimers, will not prevent summary judgment in favor of General RV. "It is well established that failure to read an agreement is not a valid defense to enforcement of a contract. A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery v. Fid. & Guar. Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005) (citations omitted). "[I]n Michigan, a party who signs a document is deemed to know the contents of those documents and may not claim ignorance to avoid enforcement of the instrument." *HRL Land or Sea Yachts*, 2009 WL 427375 at *4 (citing *Scholz v. Montgomery Ward & Co., Inc.*, 468 N.W.2d 845, 848 (Mich. 1991)). Plaintiffs' alleged inability to read the purchase agreement is not a defense to enforcement of the contract against them.

The contents of the purchase agreement and related sale documents

---

[1] To the extent Plaintiffs are arguing that the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(a), does not permit disclaimer of implied warranties where a written warranty is provided, it is clear from the record that no written warranty was provided by General RV. The purchase agreement plainly states that General RV disclaimed all express and implied warranties, and that any written warranties "are offered by the manufacturer of the RV." ECF No. 22-1, PageID.563. Moreover, "an MMWA claim for breach of warranty depends on the plaintiff having a valid state law implied warranty claim," which Plaintiffs have not presented. *HRL Land or Sea Yachts*, 2009 WL 427375 at *5 (citing *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 300, 308 (E.D. Mich. 2004)).

are not in dispute. The Court finds that the implied warranty disclaimers contained therein meet the requirements for disclaimers established by Michigan law. General RV's disclaimer of any implied warranties was effective and, as a result, Plaintiffs' claim for violation of implied warranties fails as a matter of law. Summary judgment in favor of General RV is warranted on this claim.

### B. Violation of express warranties

Under Michigan law, a seller who makes "[a]n affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain" creates an express warranty that "the goods shall conform to the affirmation or promise." Mich. Comp. Laws § 440.2313(1)(a). Likewise, a seller who gives the buyer "[a] description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Mich. Comp. Laws § 440.2313(1)(b). As explained by the Michigan Court of Appeals, however, "any alleged oral statements made by [a seller's] representatives about the reliability of the [product] . . . are subject to the UCC statute of frauds and are therefore excluded to the extent they are inconsistent with the parties' written expressions." *Rodger v. Ford Motor Co.*, No. 275578, 2008 WL 4646140, *5 (Mich. Ct. App. Oct. 21, 2008) (citing Mich. Comp. Laws § 440.2202) ("Terms . . . to which . . . the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to those

terms . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.")). Accordingly, where a written agreement exists between the parties and that agreement is clear and unambiguous, "parol evidence of prior negotiations and representations cannot be adduced to create an express warranty and thereby vary the terms of the contract." *Heritage Res., Inc. v. Caterpillar Fin. Serv. Corp.*, 774 N.W.2d 332, 342 (Mich. Ct. App. 2009) (quoting *Salzman v. Maldaver*, 24 N.W.2d 161, 165 (Mich. 1946)).

It is undisputed that the parties' agreement was put into writing in the form of the fully executed purchase agreement. *See* ECF No. 22-1, PageID.562–63. That agreement also contains an integration clause explicitly acknowledging that the purchase agreement "contains the entire understanding between General RV and Purchaser" and that no other representations, verbal or written, had been made by General RV or relied on by Plaintiffs in entering into the agreement. *Id.* at PageID.562; *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1095 (6th Cir. 2001) ("[A]n integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of the agreement.") (applying Michigan law). Plaintiffs are therefore precluded from suing General RV under a theory of violation of express warranties not contained in the purchase agreement. *See Irwin Seating Co. v. Int'l Bus. Mach. Corp.*, No. 1:04CV568, 2005 WL 1475390, at *9 (W.D. Mich.

June 22, 2005) (explaining that plaintiff was precluded from suing on a theory of violation of express warranties because the agreement contained a conspicuous disclaimer of any prior statements to the contrary and an integration clause). Summary judgment on Plaintiffs' claim for breach of express warranties must be entered in General RV's favor.

### C. Magnuson-Moss Warranty Act

Plaintiffs next assert that General RV violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308, by attempting to disclaim the implied warranties of fitness and merchantability within 90 days of selling them a service contract. The Act creates a private right of action for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). It "serves to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances"—specifically, when the seller disclaims an implied warranty while either making a written warranty to the consumer or entering into a service contract. *Pidcock*, 371 F. Supp. 2d at 878–79 (emphasis omitted) (quoting *Rokicsak*, 219 F. Supp. 2d at 817–18).

Again, the record in this case establishes that General RV did not enter into any service contract with Plaintiffs or provide a written warranty. Although Plaintiffs purchased a service contract through

General RV, that agreement was a contract between Plaintiffs and Cornerstone only. *See* ECF No. 23-1, PageID.630 ("This Contract is between You and the Obligor (hereinafter referred to as We, Us, and Our) – Cornerstone United Administrative Services, Inc."). General RV is not a party to the contract nor did the contract establish any warranty by or service contract with General RV. *See* ECF No. 30-3; *Chaudoin*, 2017 WL 3485803 at *14; *supra* at 11. Because General RV neither made any express warranty to Plaintiffs nor entered into a service contract with them, Plaintiffs cannot sustain a claim for breach of 15 U.S.C. § 2308 against General RV. *See HRL Land or Sea Yachts*, 2009 WL 427375 at *6 (explaining that the Magnuson-Moss Warranty Act "merely provides a federal cause of action when a supplier disclaims an implied warranty while making either a written warranty or entering into a new service contract."). The Court will accordingly enter summary judgment in favor of General RV on Plaintiffs' claims for violation of the Act.

### D. Fraudulent misrepresentation

Plaintiffs' final claim is that General RV and its representatives knowingly made false statements about the quality and condition of the RV they purchased, and that these false statements induced Plaintiffs to purchase the RV, and thereby to suffer damages. Under Michigan law, to prove fraudulent misrepresentation a plaintiff must establish six elements: "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the

representation, it knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation." *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 662 (6th Cir. 2013) (citing *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 546 (Mich. 2000) (per curiam)). Further, the plaintiff's reliance on the alleged representation must have been reasonable. *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553–54 (Mich. Ct. App. 1999).

The Michigan Supreme Court has expressly held that "[r]eliance on pre-contractual representations is unreasonable as a matter of law when the contract contains an integration clause." *N. Warehousing, Inc. v. State, Dep't of Educ.*, 714 N.W.2d 287, 287 (Mich. 2006). Further, "when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract." *UAW-GM Human Res. Ctr. V. KSL Recreation Corp.*, 579 N.W.2d 411, 503 (Mich. Ct. App. 1998)[2]. Plaintiffs have made no express

---

[2] The holding in *UAW-GM* is not without its critics. A commentator in the Michigan Bar Journal criticized this and other Michigan cases for creating a rule that effectively makes it possible for a seller to get away with knowingly fraudulent

allegations and presented no evidence that would tend to show that General RV made false representations about the integration clause, such as a specific false statement to the effect that some precontract agreement or representation was actually meant to be incorporated within the written agreement when it was not, or that an agreement which was not really complete actually was—so that the incorporation clause was false. *Id.* at 505. To the contrary, the purchase agreement contains clear and express disclaimers of all warranties—express and implied—by General RV. Under Michigan law, because the purchase agreement contains a valid integration clause expressly disavowing reliance on any previous representations by General RV, and Plaintiffs have not alleged or shown that General RV made any fraudulent representations that would undermine the validity of the integration clause or that of the entire agreement, General RV is entitled to summary judgment as a matter of law on Plaintiffs' claim for fraudulent misrepresentation.

## CONCLUSION

While the Court is constrained by its duty to apply governing law, which will result in summary judgment for General RV, this ruling should not be taken as judicial approval of the near-predatory business

conduct as long as he or she can get the purchaser to sign an agreement with a broad integration clause disclaiming the impact of any statements not explicitly included in the contract. *See* Lederman, *Freedom to Defraud: Making Michigan Safe for Fraud,* 87 MICH. B.J. 19 (Mar. 2008).

practices alleged in the complaint against General RV and recounted in the factual background of this order. Everett and Patsy Carrigg were 79 and 74 years old at the time they purchased their RV. Mr. Carrigg is allegedly functionally illiterate and Mrs. Carrigg has poor eye-sight. These contracts had small print. The "aggressive" salespersons allegedly made oral statements that there was a 10-year manufacturer's warranty still in effect, when the warranty had in fact already expired at the time of the sale. The Carriggs, however, signed document after document acknowledging there were no promises made outside of the purchase agreement. Such broad "as is" disclaimers and integration clauses, as they are enforced under Michigan law, may have enabled General RV to prevail in this litigation and in other similar cases. But these victories should not be seen as granting a license to dealerships to make outlandishly false promises knowing they will be protected against any liability once the customer signs on the dotted line. The Michigan Legislature should consider beefing up this state's consumer-protection laws to prevent the kind of conduct described in Plaintiffs' amended complaint.

Nevertheless, for the reasons set out in detail above, the motion for summary judgment of Defendant Cornerstone United, Inc. will be **GRANTED**. Defendant General R.V. Center, Inc.'s motion for summary judgment will also be **GRANTED**. Plaintiffs' request for leave to once again amend their complaint is **DENIED**. *See Yuhasz v. Brush Wellman,*

*Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (explaining that "leave to amend may be denied where the amendment would be futile"). The Court will address Defendants' request for sanctions in a separate order.


Dated: September 30, 2019     s/Terrence G. Berg
_____
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE


### Certificate of Service

    I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 30, 2019.

                             s/A. Chubb
_____
                             Case Manager